## Honora McGann *vs.* Lorena J. Hamilton.

New Haven Co., June T., 1889. Andrews, C. J., Carpenter, Pardee, Loomis and Beardsley, Js.

A city charter required the common council " annually in the month of July to choose one hundred and forty-four freemen of the city to serve as jurors in the city court," and that " said court of common council shall return the names of the jurors chosen, under the hand of the mayor and the president of the board of aldermen, to the clerk of the city court." Held that where, after the choice of the jurors, the mayor and members of the council had gone out of office, and no return had been made, and a new mayor and council had been elected, the new council could make the return.

The charter required the clerk of the city court to " write the name of each juror thus chosen, fairly on a separate piece of paper, and roll up and

put the same in a box." From this box the sheriff was to draw the names when ordered by the court. Held that, where the clerk did not roll up the papers, but laid them flat in the box, and then shuffled them about, it was not a compliance with the requirement of the charter, and became a sufficient ground for a challenge of the array, in a case in which jurors, whose names were drawn from the box, were impaneled in court.

Where real estate is encroached upon and suit brought, the plaintiff will recover, not the full value of the land, but the damage he sustains in being deprived of its use; and such damage will be limited to past time.

Where the jury, under an erroneous charge of the court, returned a general verdict for the plaintiff of one dollar, and the defendant had filed a counterclaim for $100, which had been heard with the rest of the case, it was held that the smallness of the verdict was not a reason for denying the defendant a new trial for the error in the charge, because it could not be known how far the verdict was affected by the counterclaim.

[Argued June 11th—decided October 30th, 1889.]

ACTION for an encroachment upon the land of the plaintiff by the erection of a wall thereon by the defendant, and for other injury to the land ; brought to the City Court of the city of New Haven, and tried to the jury before *Pickett, J.* The defendant challenged the array of the jurors, which the court overruled. The defendant then filed a counterclaim, which was heard with the plaintiff's case, and a verdict rendered for the plaintiff for one dollar damages. The defendant appealed to this court, for error in the rulings and charge of the court. The case is fully stated in the opinion.

*J. P. Pigott* and *W. S. Pardee*, with whom was *G. P. Ingersoll*, for the appellant.

*A. H. Moulton* and *J. W. Chapin*, for the appellee.

CARPENTER, J. This case was tried to a jury in the City Court of New Haven. The defendant's attorney challenged the array of jurors on the following grounds :—

" First, because no return of the hundred and forty-four freemen chosen by the common council of the city of New Haven, in July, 1888, signed by the then mayor of the city, or by the then president of the then board of aldermen dur-

ing his then term of office, had been made to the clerk of said court.

" Second, because the names of the jurors drawn were not put into the box to be drawn, on paper rolled up, but were on straight unfolded slips of paper, which were not rolled up, but lay flat in the box." ·

The court disallowed the challenge.

The record shows that the jurymen were appointed by the court of common council in July, 1888.  Their names were not returned to the clerk of the City Court until March, 1889.  At that time the government of the city had passed into the hands of a new mayor and a new court of common council.

The charter of the city requires that " the court of common council of said city shall annually choose in the month of July one hundred and forty-four freemen of said city to serve as jurors in said City Court.  Said court of common council shall return the names of the jurors chosen as aforesaid under the hand of the mayor of said city, or of the president of the board of aldermen, to the clerk of the City Court."

The substance of the objection is, that it was not competent for the succeeding court of common council to make the required return.

It is undoubtedly true that the charter contemplates that the common council making the appointment will make the return; and it is also true that the City Court could not lawfully draw a jury from any list of names not returned; but the charter fixes no time within which the list shall be returned; and an incoming administration, finding that that duty had been omitted, might well perform it.  The jurors serving in this case were taken from that list.  The case was tried during the March term.  The presumption is, the contrary not appearing, that they were not drawn and summoned until the list had been returned.

The contention that the new court of common council and the new mayor could not officially know the action of their predecessors in this matter cannot be maintained.

The government of a city continues in whosesoever hands it may be.   The action of a government under a former administration had become and was a matter of record, and the new administration was bound to take official notice of it.   While the return was irregular in respect to time only, it was not such an irregularity as invalidated the election. In denying the challenge for the first cause, therefore, there was no error.

In respect to the second cause.   The charter requires that the clerks of the City Court " shall write each juror's name thus chosen, fairly on a separate piece of paper, and roll up and put the same into a box, which he shall provide and keep for that purpose ; and whenever the sheriff of said city, or the officer acting in his stead, shall receive a warrant from the clerk of said court to summon a jury, he shall, " in the presence of the judge or assistant judge and clerk of said court, take out of said box as many papers as his warrant directs."

The most that the court found on this point is what the clerk testified to, namely, " that when he had written the names of the jurors on separate pieces or slips of paper, he rolled about and shuffled the slips containing the names, before he put the same into the jury box, so that the order of drawing out the names from the jury box could not be foreknown."

The object of the charter was to make it impossible for the officer drawing the jurymen to exercise any partiality or discretion even.   Had the directions of the charter been strictly followed it would have been impossible to have seen the names before drawing them, and the officer serving a jury warrant could not have exercised any choice or discretion by drawing names which he desired to draw, if any, or by omitting to draw names which he preferred not to draw, if any.   As it was, the names of some of the jurors might have been on the upper side of the paper, and might have been seen ; the names of others might have been on the under side and not seen.   It was possible for him to see some of the names, and if for any reason he wished to draw them

or omit drawing them, he could have done so. The presence of the judge and the clerk could not prevent that; but, if the paper had been rolled up as directed, he could have had no choice, and the presence of the judge and clerk would have prevented or detected his drawing any more pieces of paper than his precept required, and thus fraud or partiality would have been impossible. The statute in precise terms told the clerk what to do. It did not permit him to exercise any discretion. He was not at liberty to substitute for the action required some other action which he might consider as good or better. Obedience was his first and only duty. Disobedience made it possible for the officer easily to defeat the object of the statute. The statute having directed the way in which the thing should be done, all other ways were impliedly prohibited. We are constrained to hold therefore that the court erred in overruling the second cause of challenge.

The testimony of Sylvanus Butler, an experienced civil engineer, that two stakes, each having a nail in the top, found very near his survey line, were surveyor's stakes, was unexceptionable. It was a matter with which he was familiar as an expert.

The court told the jury that "whenever by one act a permanent injury is done to the property of another, the damages should be assessed once for all, and any depreciation in the value of the property on account of such trespass is an element of damages." This is assigned as error.

The rule here given is applicable to a case where the damage consists in an injury to the property itself whereby its value is lessened, but it is hardly applicable to a case where the damage consists solely in depriving the owner of the use of it for the time being. If it is, then the legal effect of it is this—that when one erects a building or other permanent structure upon the land of another, and the owner sues and recovers damages, the result is that the title to the land thus taken vests in the wrong-doer. The true rule we understand to be, that where real estate is encroached upon, as is claimed in this case, the plaintiff will recover, not the full value of

the land, but the damage he sustains in being deprived of its use ; and such damage will be limited to past time.  *Shadwell* v. *Hutchinson*, 2 Barn. & Adol., 97.

It is suggested that inasmuch as the verdict was for one dollar damages only, the court will not reverse the judgment even if it finds error, for the reason that the defendant could not have been injured by the erroneous charge. This might be so were it not for the fact that the defendant files a counterclaim in which she claims $100 damages.  That being so, and the verdict being general, it is impossible to say how much damage was allowed to either party.

But without discussing this subject further, it is sufficient to say that the judgment must be reversed and a new trial ordered for error in denying the challenge to the array for the second cause specified.

In this opinion the other judges concurred.